UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
PETER LAKE and TIMOTHY CREED,
Individually, And On Behalf Of All Others
Similarly Situated,

                      Plaintiffs,              **REPORT AND**
                                                       **RECOMMENDATION**
        -against-                        CV 18-2009 (SJF)(AYS)

FORD MOTOR COMPANY,

                       Defendant.
----------------------------------------------------------------X
**SHIELDS, Magistrate Judge:**

      This is an action in which Plaintiffs Peter Lake ("Lake") and Timothy Creed ("Creed") (collectively "Plaintiffs) seek compensatory damages and injunctive relief arising from defendant Ford Motor Company's ("Ford" or "Defendant") sale and lease of over 32,000 allegedly defective Explorer vehicles to state agencies and municipalities throughout the United States for law enforcement use. Plaintiffs claim the vehicles are defective and bring three claims individually and on behalf of a putative class of all New York police officers who drive or who have operated the vehicles. In particular, Plaintiff's assert a claim for breach of implied warranty, violation of New York's General Municipal Law § 205-e ("GML § 205-e") and violation of New York's Consumer Protection from Deceptive Acts and Practices Act, N.Y. Gen. Bus. L. § 349 ("GBL § 349").

      Presently before this Court, upon referral by the Honorable Sandra J. Feuerstein for Report and Recommendation, is Defendant's motion pursuant to Rule 12 of the Federal Rules of Civil Procedure to dismiss Plaintiffs' Amended Complaint, see Docket Entry herein ("DE") [26] (Motion to Dismiss) and Defendant's motion to strike the class allegations in Plaintiffs' Amended Complaint ("Motion to Strike"). DE [32]; see Electronic Order dated October 9, 2018

(referring motion). For the reasons set forth below, this Court respectfully recommends that the Motion to Dismiss be granted, and the Motion to Strike be dismissed as moot.

## BACKGROUND

I.  Facts

   A.  The Vehicles

Defendant Ford began selling and leasing the fifth generation of Explorer vehicles with the 2011 model year. Amended Complaint ("Am. Compl.") ¶ 45, DE [16]. The 2011 through 2017 models contain design flaws and/or defective exhaust and/or HVAC systems that permit carbon monoxide and exhaust to enter into the passenger compartments of those vehicles while being driven. Id. ¶ 47. Plaintiffs claim that Ford knows of this problem, and has acted unlawfully by failing to remedy it. Id. ¶ 2.

   B.  Plaintiffs

Both Plaintiffs are police officers employed by the Nassau County Police Department ("NCPD"). Am. Compl. ¶¶ 72-73. They were assigned to drive vehicles that they claim were three of approximately 120 Ford Explorers owned and purchased by the NCPD. Id. ¶ 76.

Plaintiffs allege that as a result of Ford's failure to disclose the alleged defect, they were exposed to unwanted and harmful fumes which create risk to their health and safety while operating or driving the vehicles. Am. Compl. ¶ 71.

On February 19, 2018, plaintiff Lake was involved in a motor vehicle accident as an alleged result of dangerous levels of carbon monoxide in the cabin of his assigned Ford Explorer. Am. Compl. ¶ 85. The hospital noted elevated levels of carbon monoxide in his blood. Id.

On December 22, 2017, plaintiff Creed began experiencing headaches, dizziness and respiratory distress as a result of alleged elevated levels of carbon monoxide in the cabin of his

assigned vehicle. Am. Compl. ¶ 84. As was the case with respect to Lake, The hospital noted elevated levels of carbon monoxide in Creed's blood. Id.

    C.    <u>Notice</u>

Plaintiffs claim that the NCPD notified Defendant of the problem with the Explorers in its fleet, and that Ford failed to remedy it. Am. Compl. ¶ 85[1]. As of February 27, 2018, the Police Union continued to question the NCPD with respect to the status of repairs on the Explorers, because the carbon monoxide monitors and alarms continued to go off, indicating the presence of unsafe levels of carbon monoxide. Id. ¶ 86.

Plaintiffs allege that the authorized Ford Fleet representative has failed to fix the problem on behalf of the NCPD. Am. Compl. ¶ 87. They further claim that the entire fleet of Explorer police vehicles owned and/or operated by the NCPD underwent Ford's repairs and replacements, but the "fix" performed was unsuccessful. Id. ¶ 88.

II.    <u>Procedural History</u>

Plaintiffs commenced this lawsuit on April 4, 2018. On June 29, 2018, Defendant noticed its intent to move for dismissal of the Complaint. DE [14]. On July 12, 2018, Plaintiffs filed an Amended Complaint, <u>see</u> DE [15], followed by a Corrected Amended Complaint on July 13, 2018. DE [16]. On August 6, 2018, an initial conference was held before the District Court. DE [18]. That Court held a status conference on August 28, 2018. DE [22].

On October 5, 2018, Defendant filed its motion to dismiss and its motion to strike the class allegations. DE [16], [32]. Upon briefing of the motions, they were referred to this Court for report and recommendation. <u>See</u> Order dated 10/09/2018.

---

[1]. The Court notes that the Amended Complaint contains two paragraph 85's. <u>See</u> Am. Compl. ¶ 85.

3

III.    Claims in the Amended Complaint

Plaintiff allege that as a result of Defendant's failure to disclose the alleged defect, they were "exposed to unwanted and harmful fumes which create risk to their health and safety while operating or driving the Explorers". Am. Compl. ¶ 71. Plaintiffs bring claims for breach of implied warranty, violation of New York's General Municipal Law § 205-e ("GML § 205-e") and violation of New York's Consumer Protection from Deceptive Acts and Practices Act, N.Y. Gen. Bus. L. § 349 ("GBL § 349"). Plaintiffs seek compensatory damages for alleged personal injuries as well various forms of injunctive relief, including an order requiring Ford to stop sales or leases of the subject vehicles, and enjoining Plaintiffs and members of the purported class from operating or driving the vehicles until Ford repairs them. Id. at Prayer for relief (e) and (f). Plaintiffs further seek certification of the following class:

> All New York police officers and law enforcement personnel who formerly or currently operate or drive at least one of the following vehicles, that has been modified by FORD, for police use: 2011 Ford Explorer, 2012 Ford Explorer, 2013 Ford Explorer, 2014 Ford Explorer, 2015 Ford Explorer, 2016 Ford Explorer and/or 2017 Ford Explorer.

Id. ¶ 93.

IV.    The Motions

Defendant moves to dismiss each of Plaintiffs' claims. It is argued that Plaintiffs' breach of implied warranty claims are barred by the terms of the written warranties covering the vehicles. In particular it is asserted that Fords' Warranty Guide affirmatively disclaims implied warranties for vehicles used primarily for business or commercial purposes. Defendant further argues that Plaintiffs have failed to plead that they experienced a problem with their vehicles within the applicable warranty period. Because Ford limited the duration of implied warranties to

4

the duration of its express warranty, Defendant argues that Plaintiffs have not offered facts sufficient to show that their implied warranty claim falls within an applicable durational period.

Defendant next avers that Plaintiffs' claim under GML § 205-e fails because an alleged violation of the National Highway and Motor Vehicle Safety Act, 49 U.S.C. §§ 30118, et seq. ("Section 205-e" or the "Safety Act") cannot serve as a predicate violation of Section 205-e. Defendant also argues that Plaintiff Creed's Section 205-e claim must fail because he does not allege to have been injured in an accident, as required by New York law.

Last, Defendant asserts that Plaintiffs lack standing to bring a claim under GBL § 349 because they fail to plead they are consumers or identify a consumer oriented practice as defined by the terms of the statute. Defendant also argues that Plaintiffs fail to identify a cognizable injury, or that any challenged conduct by Defendant could be the proximate result of an injury. Having summarized the relevant facts and arguments, the Court turns to the merits of the motions.

## DISCUSSION

I.  Legal Principles: Standards on Motions to Dismiss

   A.  Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119–20 (2d Cir. 2010). Facial plausibility is established by pleading factual content sufficient to allow a court to reasonably infer the defendant's liability. Twombly, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at

555. Nor is a pleading that offers nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," sufficient. Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555).

    B.    Documents Considered

In deciding a Rule 12(b)(6) motion, the Court may consider only the facts alleged in the complaint (which are accepted as true), documents attached to the complaint as exhibits or incorporated by reference therein, matters as to which judicial notice may be taken, and documents upon which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Gesuldi v. Difazio, 2018 WL 1202640, *4 (E.D.N.Y. March 8, 2018); David Lerner Assocs., Inc. v. Philadelphia Indem. Ins. Co., 934 F. Supp. 2d 533, 539 (E.D.N.Y. 2013). Among documents considered as integral to a complaint are warranties at issue. Thus, in the context of motion to dismiss a warranty claim, courts may consider the contents of a warranty, whether or not the plaintiff attaches the warranty as an exhibit to its complaint. Bill Diodato Photography LLC v. Avon Prods., Inc., 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012) ("'In the event that a plaintiff alleges claim based on a written instrument, as is the case here, the court may consider such an instrument in ruling on a Rule 12(b)(6) motion even if it was not attached to the complaint and made a part thereof[.]'")

II.    Disposition of the Motion

    A.    Breach of Implied Warranty Claims

Defendant first argues that all of Plaintiffs' breach of implied warranty claims must be dismissed because the contract contains an explicit disclaimer of all warranties. Ford's Warranty Guide states:

6

> You may have some implied warranties. For example, you may have an implied warranty of merchantability (that the car or light truck is reasonably fit for the general purpose for which it was sold) or an implied warranty of fitness for a particular purpose (that the car of light truck is suitable for your special purposes), is a special purpose was specifically disclosed to Ford itself not merely to the dealer before your purchase, and Ford itself not just the dealer told you the vehicle would be suitable for that purpose.
>
> These implied warranties are limited, to the extent allowed by law, to the time period covered by the written warranties, or to the applicable time period provided by state law, whichever period is shorter. These implied warranties do not apply at all if you use your vehicle for business or commercial purposes.

Aff, of Daniel C. Harkins in Support of Ford's Motion to Dismiss the Amended Complaint ("Harkins Aff."), Ex A. Warranty Guide, at 12[2], DE [28-1].

The implied warranty of merchantability is governed by New York Uniform Commercial Code ("UCC") Section 2–314(1), which provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2–314(1). In order for goods to be merchantable, they must be "fit for the ordinary purposes for which such goods are used." *Id.* § 2–314(2)(c). Therefore, "[t]o establish that a product is defective for purposes of a breach of implied warranty of merchantability claim, a plaintiff must show that the product was not reasonably fit for its intended purpose, an inquiry that focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners." <u>Wojcik v. Empire Forklift, Inc.</u>, 14 A.D.3d 63, 66, 783 N.Y.S.2d 698 (3d Dep't 2004) (internal alterations, citations, and quotation marks omitted); <u>accord</u> <u>Denny v. Ford Motor Co.</u>, 87 N.Y.2d 248, 259–60, 639 N.Y.S.2d 250, 662 N.E.2d 730 (1995). "A warranty of fitness for ordinary purposes does

---

[2]. For ease of reference, page numbers referenced herein are numbers assigned to pages on electronically filed documents, and not to the underlying documents themselves except for page numbers referenced in cases.

7

not mean that the product will fulfill a buyer's every expectation." <u>Denny</u>, 87 N.Y.2d at 258 n. 4, 639 N.Y.S.2d 250, 662 N.E.2d 730 (internal alterations, citation, and quotation marks omitted). Instead, recovery for breach of the implied warranty of merchantability is warranted "upon a showing that the product was not minimally safe for its expected purpose—without regard to the feasibility of alternative designs or the manufacturer's 'reasonableness' in marketing it in that unsafe condition." <u>Id.</u> at 259, 639 N.Y.S.2d 250, 662 N.E.2d 730.

Although "a cause of action for breach of warranty is a contractual remedy ... which seeks to provide the parties with the benefit of their bargain," <u>Martin v. Julius Dierck Equip. Co.</u>, 43 N.Y.2d 583, 589, 403 N.Y.S.2d 185, 374 N.E.2d 97 (1978), a warranty extends to a person "if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." N.Y. U.C.C. § 2–318.

Plaintiffs' claim of breach of implied warranties fails because Ford clearly disclaimed all such warranties. The U.C.C. allows sellers to exclude implied warranties. To exclude the implied warranty of merchantability, the language disclaiming the warranty must use the word "merchantability," and if the exclusion is in writing, it must be "conspicuous." N.Y. U.C.C. § 2–316(2). To exclude the implied warranty of fitness, the exclusion "must be by a writing and conspicuous." <u>Id.</u>; <u>see</u> <u>also</u> <u>Maltz v. Union Carbide Chems. & Plastics Co.</u>, 992 F. Supp. 286, 304 (S.D.N.Y.1998) ("It is well-settled that under New York law, parties to a contract may exclude or modify implied warranties so long as the warranty disclaimer is conspicuous and specific."). "The question of whether a particular disclaimer is conspicuous is a question of law to be determined by the Court." <u>Kolle v. Mainship Corp.</u>, 2006 WL 1085067, at *3 (E.D.N.Y. Apr. 20, 2006).

In this case, it is clear that Ford properly disclaimed all implied warranties. The language in Ford's Warranty Guide is unambiguous and tracks the requirements imposed by the U.C.C. In addition, the disclaimer exclusion is conspicuous. It appears directly below the limited warranty, with a bold-face and capitalized heading entitled "Limitations And Disclaimers." Harkins Aff. Ex. A at 11. The exclusion is in a larger font and in all capital letters. Sky Acres Aviation Servs., Inc. v. Styles Aviation, Inc., 210 A.D.2d 393, 393, 620 N.Y.S.2d 442 (2d Dep't 1994) (disclaimer "in bold type and readily noticeable" is conspicuous). Because the disclaimer of warranties presents a question of law amenable to decision on a motion to dismiss, and upon the Court's review as set forth above, it is clear that Ford properly disclaimed implied warranties. It is respectfully recommended that Plaintiffs' claims for breach of implied warranties be dismissed with prejudice.

  B.  General Municipal Law § 205-e

"General Municipal Law § 205–e contains a right of action allowing police officers to sue for injuries sustained in the line of duty 'as a result of any neglect, omission, willful or culpable negligence of any person or persons in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments.'" Gammons v. City of New York, 24 N.Y.3d 562, 567–68, 25 N.E.3d 958, 961 (2014) (citing Section § 205–e(1)). "In order to assert a claim under General Municipal Law § 205–e, a plaintiff 'must [1] identify the statute or ordinance with which the defendant failed to comply, [2] describe the manner in which the [police officer] was injured, and [3] set forth those facts from which it may be inferred that the defendant's negligence directly or indirectly caused the harm." Gammons, 24 N.Y.3d at 570 (citing Williams v. City of New York, 2 N.Y.3d 352, 363, 779 N.Y.S.2d 449, 811 N.E.2d 1103 (2004) (internal quotation

9

marks and citations omitted)). "In order to recover under General Municipal Law § 205–e '[the] police officer must demonstrate [an] injury resulting from negligent noncompliance with a requirement found in a well-developed body of law and regulation that imposes clear duties.'" Gammons, 4 N.Y.3d at 571, 797 N.Y.S.2d 380, 830 N.E.2d 278 (citing Williams, 2 N.Y.3d at 364, 779 N.Y.S.2d 449, 811 N.E.2d 1103 (citing Galapo v. City of New York, 95 N.Y.2d 568, 574, 721 N.Y.S.2d 857, 744 N.E.2d 685 (2000))). "[T]o make out a claim under GML §§ 205–a and 205–e, "a plaintiff is not required to show the same degree of proximate cause as is required in a common-law negligence action ... [r]ather, the substantial case law that has developed on the subject holds that a plaintiff need only establish a practical or reasonable connection between the statutory or regulatory violation and the claimed injury.'" Breitkopf v. Gentile, 41 F. Supp. 3d 220, 264 (E.D.N.Y.2014) (citing Giuffrida v. Citibank Corp., 100 N.Y.2d 72, 81, 790 N.E.2d 772, 760 N.Y.S.2d 397 (2003) (internal quotation marks and citation omitted)).

As noted above, to state a claim under Section 205–e, a plaintiff must "identify the statute or ordinance with which defendant failed to comply." Gammons, 24 N.Y.3d at 570 (citing Williams, 2 N.Y.3d at 363, 779 N.Y.S.2d 449, 811 N.E.2d 1103 (internal quotation marks and citations omitted). Here, Plaintiffs base their Section 205–e claim on the National Highway and Motor Vehicle Safety Act (the "Safety Act").

Through the Safety Act, Congress delegated authority to the Secretary of Transportation and the National Highway Traffic Safety Administration ("NHTSA") to establish, administer, regulate and enforce the reporting and disclosure requirements applicable to automobile manufacturers, as well as the procedures governing automotive recalls and associated notifications. See 49 U.S.C. § 30101, et seq. The Safety Act establishes certain reporting and

10

disclosure requirements relating to motor vehicles safety and also establishes "its own extensive array of administrative remedies for a violation of its notification obligations." <u>Ayres v. Gen. Motors Corp.</u>, 234 F. 2d 514, 522 (11th Cir. 2000). However, "the Safety Act confers no private cause of action to enforce its notification requirements" <u>Id.</u>; <u>accord</u> <u>Handy v. Gen. Motors Corp.</u>, 518 F.2d 786, 788 (9th Cr. 1975) ("The district court correctly ruled that Congress did not intend to create private rights of action [under the Safety Act] in favor of individual purchasers of motor vehicles when it adopted the comprehensive system of regulation administered by the NHTSA.") <u>see also</u> <u>In re: Old Carco LLC</u>, 2017 WL 1628888, at *5 (S.D.N.Y. Bankr. Apr. 28, 2017) (collecting cases holding that the Safety Act does not create a private right of action).

Here, Plaintiffs try to use a state law claim as a vehicle to privately enforce a federal statute that lacks a private right of action. Because the Safety Act does not create a private right of action, it cannot form the basis of Plaintiff's Section 205-e claim. "The overriding purpose behind adoption of General Municipal Law § 205-e was to ameliorate the effect of the common-law rule that <u>disadvantaged</u> police officers who, unlike members of the general public, were barred from recovery for injuries resulting from risks inherent in their job. The statute, was not, however, intended to give police officers <u>greater</u> rights and remedies than those available to the general public" <u>Galapo v City of New York</u>, 95 N.Y.2d 568, 575 (2000) (emphasis in original). Allowing Plaintiffs to base their Section 205-e claims on alleged violations of the Safety Act would clearly be giving Plaintiffs "greater rights and remedies that those available to the general public." <u>Id.</u> As the federal statute does not allow for a private right of action, Plaintiffs' attempt to create one through Section 205-e is rejected. <u>See</u> <u>Pierno v. Mobil Oil Corp.</u>, 794 N.Y.S.2d 804, 808 (N.Y. Sup. Ct. 2005) (recognizing that a Section 205-e claim

11

may be preempted if the predicate violation invokes federal law). Accordingly, it is respectfully recommended that Plaintiffs' Section 205-e claim be dismissed with prejudice.

  C. <u>New York General Business Law § 349</u>

To state a claim under Section 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." <u>Koch v. Acker, Merrall & Condit Co.</u>, 18 N.Y.3d 940, 941, 944 N.Y.S.2d 452, 967 N.E.2d 675 (N.Y. 2012). Further, each plaintiff must "individually plead [each of] the disclosures he or she received were inadequate, misleading, or false, and that she was injured as a result of the insufficient or false disclosures." <u>Belfiore v. Procter & Gamble Co.</u>, 94 F. Supp. 3d 440, 446 (E.D.N.Y. 2015).

[P]arties claiming the benefit of [General Business Law § 349(h)] must, at the threshold, charge conduct that is consumer oriented." <u>New York Univ. v. Continental Ins. Co.</u>, 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) (citation omitted); <u>see</u> <u>also</u> <u>Gaidon v. Guardian Life Ins. Co. of Am.</u>, 94 N.Y.2d 330, 334, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999) (citation omitted); <u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank</u>, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995). "Private contract disputes, unique to the parties ... [do] not fall within the ambit of the statute." <u>Oswego Laborers' Local 214 Pension Fund</u>, 85 N.Y.2d at 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (citation omitted); <u>see</u> <u>also</u> <u>New York Univ.</u>, 87 N.Y.2d at 320, 639 N.Y.S.2d 283, 662 N.E.2d 763. A "'single shot transaction,'" <u>Genesco Entertainment, Div. of Lymutt Indus., Inc. v. Koch</u>, 593 F. Supp. 743, 752 (S.D.N.Y.1984), which is "tailored to meet the purchaser's wishes and requirements," does not, without more, constitute consumer-oriented conduct for the purposes of this statute. <u>See</u> <u>New York Univ.</u>, 87 N.Y.2d at 321, 639 N.Y.S.2d 283, 662 N.E.2d 763; <u>see</u>

also Biancone v. Bossi, 24 A.D.3d 582, 583, 806 N.Y.S.2d 694 (2d Dep't 2005) (citations omitted).

On the other hand, conduct has been held to be sufficiently consumer-oriented to satisfy the statute where it involved 'an extensive marketing scheme' ..., where it involved the 'multi-media dissemination of information to the public' ..., and where it constituted a standard or routine practice that was 'consumer-oriented in the sense that [it] potentially affect[ed] similarly situated consumers.'" North State Autobahn, Inc. v. Progressive Ins. Group Co., 102 A.D.3d 5, 953 N.Y.S.2d 96, 101 (2d Dep't 2012) (internal and other quotations omitted). "Simply put, '[the] defendant's acts or practices must have a broad impact on consumers at large.'" Id. (quotation and other citations omitted). Courts considering the scope of the statute have repeatedly held that "a consumer, for § 349 purposes, is one who purchase[s] goods and services for personal, family or household use." Exxonmobil Inter–America, Inc. v. Advanced Info. Eng'g Servs., Inc., 328 F. Supp. 2d 443, 448 (S.D.N.Y.2004) (internal quotation marks omitted); see also Cruz v. NYNEX Info. Res., 703 N.Y.S.2d 103, 106 (App. Div. 2000).

Here, by Plaintiffs' own admissions, they did not purchase the vehicles for personal, family, or household use. Indeed, Plaintiffs did not purchase the vehicles at all. Therefore, Plaintiffs are not consumers under Section 349. Further, the vehicles were not purchased by the NCPD for personal, family, or household use. Therefore, even the NCPD does not fall under the scope of "consumers" pursuant to Section 349.

Moreover, the fact that consumers were the ultimate end-users of the product that was sold does not convert the transaction into a consumer transaction. Although Plaintiffs allege that several officers may be harmed by Ford's alleged omissions regarding the exhaust odor defect, the deceptive conduct complained of, the omission of the defect in the vehicles purchased by

13

police departments, was not directed at the consuming public. Although consumers eventually stood to be affected by any defects in the product, questions about misrepresentations between the parties are "essentially private matters" and do not come within the ambit of section 349. Pfizer, Inc. v. Stryker Corp., 2003 WL 21660339, *4 (S.D.N.Y. July 15, 2003) (in sale of business that manufactured artificial knee replacement joints, allegations of misrepresentations by seller regarding compliance with law and safety of products were private matters between sophisticated business entities and did not fall within section 349 despite fact that consumer could eventually be affected by defects in products); see also Siotkas v. LabOne, Inc., 2009 WL 691967, *1 (E.D.N.Y., March 12, 2009) (drug testing of urine samples is not a consumer product, but a service that only a business would purchase—section 349 claim against testing lab dismissed).

It is not enough under section 349 to simply allege some harm to the end-user consumer. To the extent that Plaintiffs have alleged harm to consumers of the vehicles, its claim for damages as a result of those injuries is indirect and derivative. It is well-settled that such derivative actions are barred under section 349. See City of New York v. Smokes–Spirits.Com, Inc., 911 N.E.2d 834, 838 (N.Y.2009); Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc., 818 N.E.2d 1140, 1144 (N.Y. 2004). "An injury is indirect or derivative when the loss arises solely as a result of injuries sustained by another party." Blue Cross, 818 N.E.2d at 1145. Here, Plaintiffs have alleged that Defendant omitted information regarding the exhaust odor defect. In reliance on the alleged omissions, the police departments purchased and utilized the vehicles which Plaintiffs were ultimately directed to use. Plaintiffs utilized the vehicles and, in some cases, officers, including Plaintiffs became ill. Plaintiffs' allegations of harm, indirect and derivative as they are, do not fall within the ambit of section 349. See SmokesSpirits.Com, 911

14

N.E.2d 834 (city did not have standing to assert section 349 claim against cigarette retailers where alleged injury, lost tax revenue, was entirely derivative of injuries allegedly suffered by consumers); Blue Cross & Blue Shield, 818 N.E.2d 1140 (section 349 does not authorize health insurer to sue tobacco companies derivatively to recover for injuries to its insureds resulting from the companies' allegedly misleading statements about the dangers of smoking); Federated Retail Holdings, Inc. v. Sanidown, Inc., 2009 WL 4927560 (S.D.N.Y. December 16, 2009) (plaintiff's alleged injury, lost profits, was distinct from that which could possibly befall consumers and could not form basis of section 349 claim).

Accordingly, this Court recommends that Defendants' motion to dismiss the GBL § 349 claim be granted.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendant's Motion to Dismiss, appearing as Docket Entry No. 26 herein, be granted in its entirety, and that Defendant's Motion to Strike, appearing as Docket Entry No. 32 herein, be denied as moot.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive

right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York
       August 22, 2019

                                       /s/ Anne Y. Shields
                                       Anne Y. Shields
                                       United States Magistrate Judge